[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of his marriage with the defendant. The court heard testimony over the course of five days of trial. Based upon the evidence presented, the court makes the following findings and issues the following orders.
The plaintiff and the defendant married on September 7, 1977. The plaintiff has continuously resided in the state of Connecticut for at least twelve months prior to bringing this action. The marriage has broken down irretrievably. There are three minor children born as a result of the marriage, Robert T. Lowe, III, born on November 8, 1978, Christopher E. Lowe, born on September 27, 1980, and Lauren C. Lowe, born on October 1, 1984.
The parties have previously resolved the issues of custody and visitation. A written agreement governing these issues was approved by the court, Pittman, J., on December 21, 1995. Pursuant to this agreement, the plaintiff has sole custody of Robert and the defendant has sole custody of Christopher and Lauren.
The plaintiff is forty-two years old. He is currently employed as a salesperson selling office products for two companies: Staples Business Advantage and Office Interiors. He has been in the business of selling office products for the past twenty five years. For twenty-four of those twenty-five years, the plaintiff worked for Arlo Products. In November 1995, Staples purchased Arlo.
Except for a quarterly expense allowance, the plaintiff is paid solely by commission. He presently receives a percentage of the gross profit on those items that he sells. The percentage CT Page 2961-A changes according to a sliding scale that is based on the gross profit margin for the individual product. The lower the profit margin the lower the commission. The commission percentage ranges from 10% to 35%. The plaintiff presently receives a weekly draw from Staples in the gross amount of $650 and a monthly commission check which varies based on sales.
The plaintiff has earned a lucrative salary selling office products. According to his tax returns, his income from employment totaled approximately $188,000 in 1991, $151,000 in 1992, $184,000 in 1993 and $102,000 in 1994. His income decreased substantially in 1994 due to the loss of two major accounts, Yale-New Haven Hospital and Southern New England Telephone.
According to the W-2 tax forms submitted at trial, the plaintiff's income also fell in 1995. Those forms show a gross income of $76,412. The W-2 forms do not reflect all the income that the plaintiff earned from employment in 1995 because they do not include some bonuses due to him.
The plaintiff claimed at trial that his income will decrease even further in the future due to his new employment at Staples. At Arlo, he was paid a straight commission of 30% rather than a commission based on a sliding scale. He is also restricted, except on a limited basis, to the circumscribed territory of Stratford and Bridgeport in seeking new customers. At Arlo, he could sell anywhere in Connecticut.
Notwithstanding these changes, the court does not find that the plaintiff's income will necessarily go down any further in 1996. While the manner in which commissions are determined has changed at Staples, there has been no showing that the amount received by the plaintiff will be reduced. Also, while he is restricted in seeking new customers, he maintains his existing customers regardless of territory. The plaintiff also admitted that he has not lost any customers since his hiring by Staples. Finally, the plaintiff's supervisor at Staples, David MacIsaac, stated that he expects Staples to be able to increase sales in the area because of Staples' superior name recognition and buying power.
The court finds the plaintiff's annual income to be $83,255 gross and $61,246 net. This finding is based on the financial affidavits submitted by the plaintiff to the court and dated March 6, 1996 and March 12, 1996. CT Page 2961-B
The defendant is fifty years old. She has not been employed since the birth of her first child in 1978. Prior to 1978, she held a clerical job at St. Raphael Hospital. The defendant previously expressed a desire to attend school so that she could update her clerical skills and return to work.
The defendant has diabetes. She also has a recent history of mental illness, including an attempted suicide. At trial, she stated that she feels that she cannot work at this time due to her diabetes. However, the court finds that her health does not prevent her from obtaining employment.
The parties own their own home at 276 White Birch Drive in Guilford. The property is in the foreclosure. (Superior Court, Judicial District of New Haven, docket no. CV95-0374637). The court in the foreclosure action found the fair market value of the property to be $280,000 and the debt, together with fees and costs, owing to the mortgagor to be $207,443. Additional mortgages also encumber the property. The court entered a judgment of foreclosure by sale on September 5, 1995.
The court finds the plaintiff at fault for the breakdown of the marriage. The plaintiff's excessive drinking and his involvement with another woman caused the collapse of the parties' long term marriage.
Despite the substantial income of the plaintiff over the past ten years, totaling in excess of $1.4 million, very little assets remain to be distributed. All the bank accounts and retirement plans have been exhausted. The marital home is in foreclosure, with little, if any, equity remaining. The plaintiff also bears responsibility for this unfortunate occurrence. His actions during the course of these divorce proceedings directly resulted in the dissipation of the family's assets.
The plaintiff withdrew and spent the IRA he held in the amount of $20,000 after the close of evidence on a motion for the restraint of assets and before the court's decision granting the motion. The plaintiff has been found in wilful contempt on two separate occasions by the court. On April 11, 1995, the court, Shortall, J., found him in contempt for failing to pay the monthly mortgage payment on the marital residence, failing to pay his one-half share of the minor children's unreimbursed medical expenses, and failing to pay the defendant's auto insurance. The CT Page 2961-C court, Alander, J., also found the plaintiff in contempt on January 19, 1996 for failing to pay the required pendente lite alimony and child support during 25 of the previous 39 weeks and for failing to place into escrow the proceeds from his sale of a boat.
The plaintiff also attempted to manipulate his income during the course of these divorce proceedings in an effort to prevent the payment of court ordered alimony and child support to the defendant. At the end of 1995, he was entitled to receive a $5,000 signing bonus check and 13 nonrefundable draw checks from Staples. He had Staples hold these checks in order to avoid paying any portion of them to the defendant.
The court has previously found arrearages owed by the plaintiff to the defendant. On April 12, 1995, the court, Shortall, J., found an arrearage for auto insurance and mortgage payments totaling $4,765.36, an arrearage for unreimbursed medical expenses of $657, and an arrearage for psychiatrist expenses of $2,008.10. On February 6, 1996, the court, Alander, J., found an arrearage totaling $27,430.64 for unpaid alimony and child support. The plaintiff paid $5,000 toward the arrearages through payment of a purge order on January 19, 1996 in connection with his incarceration for contempt.
In addition, the plaintiff has been ordered to pay attorney's fees and costs as a result of findings of contempt against him. On April 12, 1995, the court, Shortall, J., ordered the plaintiff to pay $2,000 in attorney's fees and $90.20 for costs. On February 18, 1996, the court, Alander, J., ordered the plaintiff to pay $4,500 in attorney's fees and $500.29 for costs. The issue of payment of these sums was deferred until the final hearing on the dissolution.
On September 7, 1994, the defendant was ordered by the court, Bassick, J., to pay the plaintiff $198.48 for costs in connection with a motion for contempt.
The defendant has incurred attorney's fees in the total amount of $60,300. The immense size of the fee is directly attributable to the defiant behavior of the plaintiff throughout the course of the proceedings.
The court finds the defendant's attorney's fees to be reasonable given the time involved and the quality of the work CT Page 2961-D performed. Based on the respective financial abilities of the parties and the statutory criteria set forth in § 46b-82, the plaintiff should pay a significant portion of the defendant's attorney's fees.
Of the total amount incurred, $12,500 has been paid. As noted previously, the court, pursuant to prior contempt proceedings, has ordered the plaintiff to pay $6,600 toward the defendant's attorney's fees. The plaintiff is hereby ordered to pay an additional $10,000 of the defendant's attorney's fees. This sum shall be added to the outstanding arrearage owed by the plaintiff.
In determining the orders contained herein, I have carefully considered all the statutory criteria contained in Conn. General Statutes § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The parties' agreement concerning custody and visitation dated December 21, 1995 and approved by the court, Pittman, J., on that date is hereby incorporated in the court's judgment.
3. The plaintiff shall pay the defendant $114 each week as child support for the minor children Christopher and Lauren. This amount shall be withheld through a wage withholding from the weekly draw received by the plaintiff from Staples. This amount is in accordance with the child support guidelines. It is based on the shared custody arrangement under which the plaintiff shall have sole custody of Robert and the defendant shall have sole custody of Christopher and Lauren. The plaintiff's child support obligation to children in the custody of the defendant is reduced pursuant to the guidelines because of the plaintiff's obligation to support Robert. Robert will graduate from high school in June of 1997. At that time, a substantial change of circumstances will occur that will warrant the defendant seeking a modification of the child support order. CT Page 2961-E
4. The plaintiff shall pay the defendant the following sums as periodic alimony:[1]
 a. In order to provide the defendant with the opportunity to return to school and update her clerical skills, the plaintiff shall pay the defendant a total of $650 per week for a period of two years commencing on the date of this decision. Of this amount, $286 shall be withheld on a weekly basis through a wage withholding from the weekly draw received by the plaintiff from Staples. The remaining $364 per week shall be paid directly to the defendant by the plaintiff.
 b. After the expiration of the two year period referred to in paragraph 4a, the plaintiff shall pay the defendant a total of $450 per week. The defendant may earn a gross annual income of $20,000 before her earned income will constitute a substantial change of circumstances that may warrant a modification of the alimony award.
5. The payment of periodic alimony shall terminate upon the death of either party, the defendant's remarriage or cohabitation by the defendant pursuant to Conn. Gen. Stat. § 46b-86 (b).
6. The plaintiff shall provide the defendant within one week of receipt with a copy of his monthly paychecks, quarterly allowance statements, commission checks, bonus checks, earning statements, expense checks or any other written documentation concerning pay, commission, bonuses, expense reimbursements or earnings provided him by his employers. The plaintiff shall also provide the defendant with a copy of any W-2 wage and tax statement within one week of its receipt by him. The plaintiff shall provide the defendant with a copy of his completed state and federal income tax returns each year within one week of their respective filings.
7. The wilful failure of the plaintiff to pay any of his financial obligations in accordance with this decision shall result in the imposition of interest at the rate of 10% per annum from the date the payment was due until the date it is ultimately made. In light of the plaintiff's previous acts in contempt of the court's CT Page 2961-F orders, this provision is necessary in order to insure compliance with the orders contained herein.
8. The defendant shall be the sole owner of the 1990 Chevrolet Suburban.
9. The plaintiff shall become the sole owner of the personal property presently in his possession and the defendant shall become the sole owner of the personal property presently in her possession.
10. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits.
11. The plaintiff shall provide medical insurance for the minor children through his place of employment. The plaintiff and the defendant shall share equally the cost of any unreimbursed medical expenses.
12. The parties agreed at trial that the plaintiff will pay for the college education of the three children to the extent he is financially able to do so. This agreement is made an enforceable order of the court.
13. The parties agreed at trial that the plaintiff will quitclaim to the defendant his interest in the marital home at 276 White Birch Drive, Guilford, Connecticut. This agreement is made an enforceable order of the court. The plaintiff shall also hold harmless and indemnify the defendant from the first and second mortgages on the property and from any deficiency that may result from the foreclosure or sale of the property.
14. The plaintiff has previously been found to owe the defendant an arrearage totaling $34,834.50. The plaintiff also owes the defendant a total of $16,600 in attorney's fees and $590.49 for costs. This sum less the $5,000 paid by the plaintiff and the $198.48 owed the plaintiff by the defendant results in a total amount owed of $46,853.51. The plaintiff is ordered to pay to the defendant within two weeks of the date of this decision the net proceeds of the $5,000 signing bonus and the remaining nonrefundable draw checks CT Page 2961-G presently held by Staples as well as the $1,908 being held is escrow by the plaintiff's attorney. These funds will first be applied by the defendant to the outstanding attorney's fees and costs owed by the plaintiff and any remaining funds applied to the outstanding arrearage. The plaintiff is ordered to pay $50 each week to the defendant until the outstanding arrearage is paid in full.
Jon M. Alander, Judge